# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 50032 | DATE | 3/18/2002 |
| CASE TITLE | Roper Whitney of Rockford, Inc. vs. TAAG Machinery Co., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' motion for summary judgment as to plaintiff's complaint

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, defendants' motion for summary judgment as to plaintiff's complaint is granted. All counts of plaintiff's complaint are hereby dismissed. The parties are ordered to schedule a settlement conference with Magistrate Judge Mahoney within the next 30 days.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| X | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 18 2002 | date docketed |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials |
| | Copy to judge/magistrate judge. | 02 MAR 18 AM 11:15 | 3-18-02 date mailed notice |
| /LC | courtroom deputy's initials | FILED-WD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number 13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

ROPER WHITNEY OF ROCKFORD, INC., )
                                 )
         Plaintiff,              )
                                 )
    v.                           ) No. 99 C 50032
                                 )
TAAG MACHINERY CO., and          )
T.K. INTERNATIONAL, LTD.,        )
                                 )
         Defendants.             )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff, Roper Whitney of Rockford, Inc. ("Roper Whitney"), has filed a four-count complaint against defendants, TAAG Machinery Company ("TAAG") and T.K. International, Ltd. ("T.K."), in which it alleges breach of contract, fraud, and conspiracy to commit fraud against TAAG (Counts I, II, and III, respectively) and conspiracy to commit fraud against T.K. (Count IV). Diversity jurisdiction is proper as Roper Whitney is incorporated and has its principal place of business in Illinois, TAAG is incorporated and has its principal place of business in California, T.K. is a Nevada corporation with its principal place of business in California, and the amount in controversy is alleged to exceed $75,000. See 28 U.S.C. § 1332. Venue is proper based on 28 U.S.C. § 1391(a). Before the court is defendants' motion for summary judgment on all counts of Roper

Whitney's complaint, filed pursuant to Federal Rule of Civil Procedure 56.[1]

## II.  PRELIMINARY MATTERS

Before turning to the merits of defendants' motion, the court takes up a few preliminary matters. First, the court expresses its disappointment at the parties' failure to cite relevant legal authority in their memoranda of law or even identify the specific legal issues being raised. Other than a few cases regarding the standard of review on a motion for summary judgment, defendants do not cite a *single* point of authority throughout their entire opening brief. Likewise, the only authority Roper Whitney can muster (again, other than some boilerplate language discussing the standard of review) is a quotation from <u>American Jurisprudence</u> and two district court cases from the Northern District of Illinois. And the first of these cases is actually directly contrary to Roper Whitney's position in this case, as the court explains below in more detail. Finally, defendants' reply brief does nothing more than cite a section of the Restatement of Contracts that is itself referred to in the section of <u>American Jurisprudence</u> quoted by Roper Whitney. Providing little in the way of case law also leaves the court guessing as to which state's law the parties

---

[1] Defendants contemporaneously filed a motion for partial summary judgment on their counterclaim against Roper Whitney, but have since affirmatively withdrawn that motion. (Def. Reply Memo. in Supp. of Def. Mot. for Partial Summ. J., p. 3)

believe should apply in this diversity action – another issue they do not mention. Indeed, the court cannot even say, "The parties have assumed without discussion that the law of Illinois (or California or whatever) governs their dispute," cf. Checkers Eight Ltd. P'Ship v. Hawkins, 241 F.3d 558, 561 (7th Cir. 2001), because the parties have barely cited any case law to begin with. Without belaboring the obvious, counsel would do well to remember the court is not in the business of performing legal research on their behalf or putting their arguments into a recognized legal framework.

Defense counsel is also reminded this court disapproves of parties filing multiple motions for summary judgment. Early on in this case – in fact just a few months after Roper Whitney filed suit and before the parties had a chance to begin the discovery process – defendants filed a motion for summary judgment as to Count I of Roper Whitney's complaint. That motion raised essentially the same issues defendants raise in the present motion and was denied because it involved questions of fact that could not be resolved on the minimal record before the court at that time. While the court finds those issues can now be decided on defendants' pending summary judgment motion, based on the evidence developed during pretrial discovery, that is exactly why defense counsel should refrain from filing such premature summary judgment motions before any discovery has taken place. More importantly, defense counsel is on notice that this

court ordinarily gives a party just one chance to move for summary judgment; any additional motions for summary judgment require leave of court.[2]

### III. <u>ANALYSIS</u>

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Chavez v. Illinois State Police</u>, 251 F.3d 612, 635 (7th Cir. 2001). In this context, the court's function is not to weigh the evidence but merely determine if there is a genuine issue for trial. <u>See</u> <u>Vargas-Harrison v. Racine Unified Sch. Dist.</u>, 272 F.3d 964, 970 (7th Cir. 2001) (citations and quotations omitted). To do so, the court asks whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. <u>See</u> <u>id.</u>

A. **<u>Breach of Contract (Count I)</u>**

Roper Whitney manufactures metal fabricating equipment. (LR

---

[2] With that in mind, it appears defendants may want to file yet another motion for summary judgment once discovery is completed on their counterclaim. As that would be the fourth such motion they have filed in this case, defendants are hereby ordered not to file any further motions for summary judgment in this case without first obtaining leave from this court. Indeed, in view of the court's decision in this opinion, it might even be wise, as well as economical, for defendants to voluntarily withdraw their counterclaim.

-4-

56.1(a) ¶ 1) As TAAG is in the business of distributing such equipment (id. ¶¶ 2, 10), it seemed only natural the two companies do business together. In 1994, Thomas Gharst, the majority shareholder and owner of TAAG, approached Roper Whitney for the purpose of allowing TAAG to distribute and sell Roper Whitney's products in Vietnam and Thailand. (Id. ¶¶ 13, 15) Following discussions between Gharst and Richard Kilmer, Roper Whitney's vice-president of sales and marketing at the time, TAAG and Roper Whitney entered into an oral agreement making Gharst the exclusive distributor of Roper Whitney products in Vietnam and Thailand. (Id. ¶¶ 14, 16) Kilmer later sent a follow-up letter to Gharst confirming Roper Whitney's "desire for TAAG to exclusively represent Roper Whitney in the sale of our line of machine tools in Vietnam and Thailand." (Id. ¶ 16; Def. Exh. 5) The crux of the dispute between the parties on summary judgment is the meaning of the "exclusivity" provision in the distributorship agreement.

Before the court can address that dispute, it must determine the appropriate body of substantive contract law to apply. A federal court sitting in diversity must apply the forum state's choice of law rules. See Land v. Yamaha Motor Corp., 272 F.3d 514, 516 (7th Cir. 2001). For present purposes, this means the "most significant contacts" test, which is the choice of law test Illinois courts use in contract actions. See GATX Leasing Corp. v. National Union Fire Ins. Co., 64 F.3d 1112, 1115 (7th Cir.

1995) (applying Illinois' "most significant contacts" test to contract dispute and listing relevant contacts). The contract between Roper Whitney and TAAG was negotiated and agreed upon in Illinois when Gharst traveled to Roper Whitney's plant in Rockford, Illinois. The subject matter of the contract — Roper Whitney's metal fabricating machinery — is also located in Illinois. Finally, Roper Whitney is an Illinois corporation with its principal place of business in Illinois. On the other hand, only two factors weigh against the application of Illinois law: (1) TAAG is a California corporation with its principal place of business in California; and (2) the contract was to be performed in either Vietnam or Thailand — the place where Gharst was to distribute Roper Whitney's products. Under the circumstances of this case, the court finds Illinois has the most significant relationship with the agreement between Roper Whitney and TAAG and will construe that agreement in accordance with Illinois contract law.

In Illinois, the interpretation and construction of a contract are questions of law a court can decide on a motion for summary judgment. See Geier v. Medtronic, Inc., 99 F.3d 238, 244 (7th Cir. 1996); Forest Glen Cmty. Homeowners Ass'n v. Bishof, 746 N.E.2d 1285, 1289 (Ill. App. Ct. 2001). Due to certain concessions made by Roper Whitney in its response to defendants' motion for summary judgment, the court's task in interpreting the distributorship agreement between Roper Whitney and TAAG is

actually quite narrow. All parties agree part of the exclusivity provision meant Roper Whitney would not permit anyone other than TAAG to sell Roper Whitney's products in Vietnam or Thailand. Roper Whitney's original theory when it filed suit, however, was that the provision additionally and reciprocally prohibited TAAG from distributing any other company's machine tools in those two countries. (Compl. Count I, ¶ 6) It has since backed off that position and now argues the exclusivity provision prohibited TAAG only from distributing or selling in Vietnam or Thailand another company's machine tools that were *competitive with* Roper Whitney's products. (Pl. Resp., p. 5; LR 56.1(a) Pl. Resp. ¶¶ 16, 17, 24) Under this interpretation, Roper Whitney believes a breach occurred when Gharst, through TAAG and T.K., began duplicating Roper Whitney's equipment with the help of a Vietnamese manufacturer, and then imported and sold the look-alikes in the United States, in direct competition with Roper Whitney.

Gharst, on the other hand, testified the exclusivity provision went only one-way: it gave TAAG the right to be the exclusive distributor for Roper Whitney products in Vietnam and Thailand, but did not prevent Gharst from selling products of other companies in those countries, even if they competed with Roper Whitney's products. (LR 56.1(a) ¶ 26) On this point even John Forlow, Roper Whitney's president, admitted during his deposition that Gharst never explicitly agreed to Roper Whitney's

understanding of what it meant to be an "exclusive distributor" — i.e., Gharst did not expressly agree to not represent or sell competing equipment in Vietnam or Thailand. (LR 56.1(a) ¶ 24; Def. Exh., Forlow dep., pp. 42-44, 56-57, 120) Instead, the only argument Roper Whitney advances to support its interpretation of the exclusivity provision as carrying "mutual contract restrictions" is that "reciprocal exclusivity is the standard" in the machine tool industry. (Pl. Resp., p. 7) As the court views the record, this approach suffers from a paucity of factual support.

Illinois courts may admit evidence of "trade usage" or "custom or usage" to interpret a seemingly clear contract, but only where the terms of the contract are susceptible to some doubt or uncertainty. See Bristow v. Drake St. Inc., 41 F.3d 345, 352 (7th Cir. 1994) (applying Illinois law); Gray v. Mundelein Coll., 695 N.E.2d 1379, 1386 (Ill. App. Ct. 1998). Such extrinsic evidence is usually admissible because it is given by disinterested third parties, objectively verifiable, and less subject to fabrication by the parties; in contrast, "subjective" evidence of ambiguity is inadmissible because it is invariably the self-serving testimony of one of the parties to the contract, making it inherently difficult to verify. See Bristow, 41 F.3d at 352; Home Ins. Co. v. Chicago & N.W. Transp. Co., 56 F.3d 763, 768 (7th Cir. 1995); Bank v. Truck Ins. Exch., 51 F.3d 736, 737 (7th Cir. 1995). Here, even assuming trade usage is appropriate

to help explain the meaning of the exclusivity provision in the agreement between Roper Whitney and TAAG, the evidence Roper Whitney has submitted to establish such custom or usage falls woefully short of surviving summary judgment.

The only evidence Roper Whitney has properly brought before the court to prove "reciprocal exclusivity" is a custom or usage in the machine tool industry is the deposition testimony of Roper Whitney's president, John Forlow.[3] But this is exactly the type of self-serving testimony by a party to the contract that objective evidence of custom or usage is designed to avoid. Indeed, Forlow's testimony is a perfect example of why such subjective evidence is justifiably not admitted. Although Forlow said he believed it was an industry practice for exclusive distributorship agreements to prohibit the distributor from selling competing products, he also admitted the exclusive distributorship agreement Roper Whitney had with TAAG was the

---

[3] To be fair, Roper Whitney also refers to the deposition of Mr. Kim Trinkley, who is supposedly the owner of a business involved in the distribution of machine tool products. According to Roper Whitney, Trinkley testified that an "exclusive distributorship agreement" to which he is a party has the same meaning Roper Whitney ascribes to its agreement with TAAG. While Trinkley's testimony arguably might be competent evidence as to a custom or usage regarding exclusive distributorship agreements in the machine tool industry, the problem is that Roper Whitney does not cite to the specific page numbers of Trinkley's deposition in its LR 56.1(b) statement of additional facts and, more critically, has not even submitted a copy of Trinkley's deposition (or excerpts thereof). The court thus has stricken paragraphs 4 and 5 of Roper Whitney's LR 56.1(b) statement of additional facts and ignored any references to Trinkley's testimony. See N.D. Ill. R. 56.1(b)(3)(B).

-9-

only one Roper Whitney has ever had in its entire ninety-year history. (Def. Exh., Forlow dep., pp. 37-38) He further testified it is the only such agreement he has ever entered into in his twenty-some years working in the machine tool industry. (Id., p. 77) Finally, Forlow stated rather bluntly he "[did not] know" and "[did not] care" about other exclusive distributorship agreements in the industry. (Id., p. 56) Given Forlow's confessed lack of familiarity with this area of the machine tool industry, the court does not see how any reasonable jury could rely on his testimony to find the existence of a "standard" (if one exists at all) in the machine tool industry regarding exclusive distributorship agreements.

Moreover, for an industry custom or usage to be binding, it must be "so uniform, long-established and generally acquiesced in and so well known as to induce the belief that the parties contracted with reference to it, nothing appearing in their contract to the contrary, *and the existence of such a custom or usage cannot be considered established when the proof consists of a few isolated instances*." National Diamond Syndicate, Inc. v. United Parcel Serv., Inc., 897 F.2d 253, 260 (7th Cir. 1990) (applying Illinois law) (internal quotations and citations omitted) (emphasis added); Pickus Constr. & Equip. v. American Overhead Door, 761 N.E.2d 356, 361-62 (Ill. App. Ct. 2001) (same); Clark v. General Foods Corp., 400 N.E.2d 1027, 1031 (Ill. App. Ct. 1980) (same). Evidence of an industry custom thus

should be presented by "several witnesses so as to establish the general knowledge and acceptance of the purported custom or usage within a particular industry." National Diamond Syndicate, 897 F.2d at 260 (citations omitted). In this respect, Roper Whitney's proof - the sole deposition testimony of John Forlow, whose only experience with exclusive distributorship agreements in his twenty-year career is the very agreement at issue in this case - is simply too paltry to show that "reciprocal exclusivity" is a "uniform" and "long-established" custom in the machine tool industry. Cf. id. at 260-61 (summary judgment in favor of defendant not appropriate where defendant's only evidence of industry custom was affidavit of one witness); Pickus, 761 N.E.2d at 361-62 (three instances of purported trade practice or custom insufficient to establish there was such a practice).[4]

---

[4] Of like effect is one of the few cases actually cited by Roper Whitney, Allen Saltzman Associates, Inc. v. Aileen, Inc., 633 F. Supp. 1161 (N.D. Ill. 1986):
> The plaintiff seeking to establish such custom and usage thus, as a practical matter, bears an unusually heavy burden of proof. [It] must have several witnesses, be able to show that the usage was generally known in the trade, and overall have such weight of the evidence on [its] side "to warrant a presumption that *all* contracts in the line of business to which the custom applies are made with reference to it."

Id. at 1163 (quoting Gord Indust. Plastics, Inc. v. Aubrey Mfg., Inc., 469 N.E.2d 389, 392 (Ill. App. Ct. 1984)) (emphasis in original). In Aileen, the court found plaintiff failed to create a genuine issue of fact regarding the existence of an industry custom based solely on the deposition testimony of Saltzman and his partner. See id. at 1163-64. As Roper Whitney has not put forward enough evidence to come anywhere close to meeting the rather stringent standard set out in Aileen, it is puzzling why it chose this case to support its position.

By not presenting sufficient evidence from which a reasonable jury could find the existence of an industry custom or usage consistent with Roper Whitney's interpretation of the distributorship agreement between it and TAAG, Roper Whitney has failed to raise a genuine issue of fact to survive summary judgment. Without any other evidence to the contrary, the court concludes the exclusivity provision did not prohibit TAAG from representing or selling products in competition with Roper Whitney's products. It accordingly grants defendants' motion for summary judgment as to Count I.

**B. Fraud and Conspiracy to Commit Fraud (Counts II - IV)**

In Count II, Roper Whitney alleges Gharst, by making false statements and promises, "fraudulently induced Roper Whitney to provide TAAG with machine tools for exhibition when his intent was to obtain samples for replication through a Vietnamese manufacturer." (Pl. Resp., p. 10; Compl. Count II, ¶ 11) Counts III and IV couch this same claim in terms of a conspiracy between TAAG and T.K. to defraud Roper Whitney. (Pl. Resp., p. 10; Count III, ¶ 16) Underpinning all three counts is the exclusivity provision, the theory apparently being either that Gharst falsely promised not to sell products that competed with Roper Whitney or that Gharst falsely induced Roper Whitney into thinking he would follow what Roper Whitney believed was the industry custom of not selling products that competed with it. The first theory is obviously without merit because, as noted above, Forlow himself

admitted Gharst never expressly agreed not to sell competing lines of metal fabricating equipment. The second theory is likewise defunct in light of Roper Whitney's failure to establish any sort of "reciprocal exclusivity" standard in the machine tool industry. The court thus grants summary judgment as to Counts II, III, and IV.

### IV. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment as to all counts of Roper Whitney's complaint is granted.

E N T E R:

_____
**PHILIP G. REINHARD, JUDGE**
**UNITED STATES DISTRICT COURT**

DATED: March 18, 2002